# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTONIO L. THOMAS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: PX-24-1307 |
| CO II TURAY, *et al.*, | * | |
| Defendants. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.  FACTUAL BACKGROUND ........................................................................................ 2

II. STANDARD OF REVIEW ......................................................................................... 5

    A.   Motion to Dismiss ............................................................................................ 5

    B.   Motion for Summary Judgment....................................................................... 7

III. ARGUMENT .............................................................................................................. 8

    A.   Defendants are immune under the Eleventh Amendment from a suit in federal court in their official capacities. ......................................................................... 8

    B.   Defendants are entitled to dismissal because Plaintiff has failed to exhaust all available administrative remedies barring him from bringing federal suit pursuant to the Prison Litigation Reform Act............................................................... 10

    C.   Plaintiff failed to state a viable claim under the Eighth Amendment. ............ 13

    D.   Plaintiff fails to state a claim against Defendants Sgt. Adelowo and CO II Bayero for excessive force under the Eighth Amendment. ...................................... 16

    E.   Defendants are entitled to qualified immunity. ............................................. 18

IV.  CONCLUSION .......................................................................................................... 21

## DEFENDANTS' EXHIBITS LIST

Exhibit 1 - Declaration of Barron Thatch

Exhibit 2 - Declaration of Jason D. Clise

Exhibit 3 - Declaration of Britt Brengle

Exhibit 4 - Certification of Health Records

Exhibit 5 - Declaration of Gilbert Abraham

Exhibit 6 - Declaration of F. Todd Taylor, Jr.

Defendants Correctional Officer II ("CO II") Momoh Turay, Sergeant Michael Adelowo, CO II Abdulsalam Bayero, CO II Olusegun Akinwekomi [1], and Lieutenant Fred Hinneh [2], by and through their attorneys, Anthony G. Brown, Attorney General of Maryland, and Ruzzel E. Castañeda, Assistant Attorney General, in support of their Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 6) or, in the Alternative, Motion for Summary Judgment, file this Memorandum of Law and state as follows:

## I. **FACTUAL BACKGROUND**

Plaintiff Antonio Thomas, #3033851, is an incarcerated individual who is in the custody of the Maryland Department of Public Safety and Correctional Services' ("DPSCS") Division of Correction, and is currently housed at Western Correctional Institution ("WCI") in Cumberland, Maryland. ECF No. 6 at 2, 6-7. Plaintiff contends that while he was housed at Jessup Correctional Institution ("JCI"), he notified Defendants CO II Olusegun Akinwekomi, CO II Momoh Turay, and Lieutenant Hinneh[3] that his cellmate, Incarcerated Individual ("I.I."), Trevon Yeldell, "was intoxicated and threatened [him] with a jail made knife" one month prior to the incident at issue. *Id.* at 4. Plaintiff and I.I. Yeldell were never cellmates prior to the incident. *See* Declaration of Barron Thatch, appended hereto as **Exhibit 1** at 4, 6-7. Nevertheless, in response to Plaintiff's notification, Plaintiff maintains that a cell search was conducted, a knife was recovered, and his cellmate was

---

[1] Improperly identified as "Akinwe Konu." *See* ECF Nos. 1 & 6.
[2] Improperly identified as "Sgt. Hennon." *See id.*
[3] In his original Complaint, Plaintiff asserts that he notified Defendant CO II Turay of the alleged threat one month prior to the incident. *See* ECF No. 1 at 2.

sent to segregation. ECF No. 6 at 4. Plaintiff further contends that he asked that his cellmate be placed onto his enemies list and "was told he would not be allowed anywhere near [Plaintiff]." *Id*. However, Plaintiff alleges that on December 20, 2023, he was stabbed in the neck and spine I.I. Yeldell and Defendants Sergeant Michael Adelowo and CO II Abdulsalam Bayero deployed their fogger into his face while he was being stabbed "adding to [his] assault [*sic*] and causing further injury" because he had an asthma attack. *Id.* at 4-5. I.I. Yeldell was placed on Plaintiff's List of Enemy Alert and Retractions after the incident. *See* Declaration of Jason D. Clise, appended hereto as **Exhibit 2** at 5.

According to DPSCS's Intelligence and Investigation Division's ("IID") Report generated in connection with this incident, on December 20, 2023, at approximately 10:52 am, Plaintiff and I.I. Yeldell were at the medication line in front of JCI's multipurpose building. *See* Declaration of Britt Brengle, appended hereto as **Exhibit 3** at 6-8. Sgt. Adelowo, who was standing at the entrance of the medication line, observed I.I. Yeldell walking towards Plaintiff and then started stabbing Plaintiff in the neck area. *Id.* CO II Bayero, who was assigned to the Central Control Room, called a 10-10 code via radio transmission, for other officers to respond to the altercation. *Id.* Sgt. Adelowo gave several direct orders to both Plaintiff and I.I. Yeldell to stop fighting, but they refused. *Id.* In response, Sgt. Adelowo employed a one-second burst of OC spray into Plaintiff and I.I. Yeldell's facial areas, which caused them to stop fighting. *Id.* Both Plaintiff and I.I. Yeldell were separated, handcuffed, and escorted to the medical unit for evaluation. *Id.* Plaintiff was treated at JCI with milk and eye wash solution for the OC spray and Plaintiff was taken

to the University of Maryland Shock Trauma for medical treatment for a stab wound to his head. *Id.* and *see generally* Certification of Health Records, appended hereto as **Exhibit 4** at 6-7. Plaintiff's X-ray at the hospital indicated that he did not have any deep tissue injuries, and four absorbable sutures were placed. *Id.* at 12. After returning from the University of Maryland Shock Trauma, Plaintiff had "no complaints" and he was cleared to return to his housing unit. *Id.* at 8. Plaintiff did not report, nor is there any record, of Plaintiff sustaining an asthma attack as a result of the incident. *Id.* at 5-6, 12-17. On December 21, 2023, Plaintiff had behavioral health review before he was sent to segregation in connection with the incident. *Id.* at 9. His appearance, eye contact, and posture as among other areas that were evaluated and found to be all within normal limits. *Id.* His mental status was unremarkable with euthymic mood. *Id.*

Plaintiff and I.I. Yeldell were informed that they will be receiving Notices of Inmate Rule Violation (NOIRV) as a result of the incident. Exhibit 3 at 7. I.I. Yeldell was placed on disciplinary segregation pending adjustment. *Id.* Plaintiff and I.I. Yeldell both refused to cooperate with the IID for an interview. *Id.* at 6-7. Plaintiff voluntarily signed a complaint withdrawal form with IID on January 18, 2024, indicating that without threat or coercion he would not like to pursue criminal charges against I.I. Yeldell. *Id.* at 6, 45. As a result of Plaintiff's withdrawal, no investigation would be conducted by IID, and his case was considered as closed. *Id.*

On January 11, 2024, Plaintiff filed a request for administrative remedies ("ARP"), JCI-0110-24, related to allegations and claims brought in the Amended Complaint. *See*

Declaration of Gilbert Abraham appended hereto as **Exhibit 5** at 4-5. ARP JCI 0110-24 was procedurally dismissed on January 16, 2024, on the grounds that the subject matter of Plaintiff's ARP was pending for investigation by IID. *Id.* at 3. Plaintiff was advised that he can appeal the dismissal to the Commissioner of Correction. *Id.*

Plaintiff filed an appeal for the dismissal of ARP JCI-0110-24 to the Incarcerated Individual Grievance Office ("IIGO"), formerly known as the Inmate Grievance Office ("IGO"). *See* Declaration of Todd Taylor, Jr. appended hereto as **Exhibit 6.** Ultimately, ARP JCI-0110-24 was dismissed on the grounds that Plaintiff's failed to substantiate custody staff knew or should have known about the attack by I.I. Yeldell or were negligent in any way. *Id.* at 3. For the determination it made, IIGO advised Plaintiff that he can pursue a judicial review with the State circuit court. *Id.* Additionally, a part of its decision, the IIGO noted that Plaintiff refused to cooperate for an interview with the IID, and he voluntarily signed a complaint withdrawal form against I.I. Yeldell. *Id.*

Plaintiff is seeking "a mental health evaluation" and "$250,000 for [his] pain and suffering" in this action. ECF No. 6 at 5. For the reasons set forth below, Plaintiff has failed to state a claim upon which relief can be granted and failed to properly exhaust his administrative remedies. Accordingly, Defendants are entitled to dismissal with prejudice. Alternatively, summary judgment should be granted in Defendants' favor as a matter of law.

## II. <u>STANDARD OF REVIEW</u>

### A. **Motion to Dismiss**

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the Plaintiff. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *Ibarra v. United States*, 120 F.3d 472 (4th Cir. 1997). Such a motion should be granted when the Plaintiff has failed to plead facts that plausibly suggest that he is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Indeed, the Plaintiff must make allegations that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). The court, however, need not accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

More particularly, as *Twombly* expounded, and *Iqbal* confirmed, the standard of sufficiency for federal pleadings "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A complaint must pass a plausibility test that "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Though Federal Rule of Civil Procedure 8 imposes no "hyper-technical" pleading requirements, it also "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. Instead, Rule 8 "contemplate[s] the statement of circumstances, occurrences,

and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (quoting 5 Wright & Miller, <u>Federal Practice and Procedure</u> § 1202, at 94-95 (3rd ed. 2004)). Under these standards only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679. Thus, in cases like this one, where Plaintiff has "…not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 683.

Plaintiff alleges insufficient facts to raise his allegations to the level of plausibility that *Twombly* and *Iqbal* require. "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Moreover, *Iqbal* clarified that "determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663-664 (citing *Twombly*, 550 U.S. at 556).

Here, Plaintiff has failed to state a claim upon which relief requested can be granted. Accordingly, Plaintiff's Amended Complaint should be dismissed with prejudice.

### B. Motion for Summary Judgment

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet this burden, the moving party must factually support

each element of his or her claim by identifying "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulation, admissions, interrogatory answers, or other materials." Fed.R. Civ. P. 56(c)(1)(A). To avoid summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

However, "a mere scintilla of evidence is not enough to create a fact issue." *Anderson*, 477 U.S. at 251. For a dispute of fact to be genuine there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 248-249. Summary judgment is proper if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.* "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48 (emphasis in original). Based upon this standard, the pleadings, and the record, Defendants are entitled to summary judgment as a matter of law.

## III. ARGUMENT

### A. Defendants are immune under the Eleventh Amendment from a suit in federal court in their official capacities.

The Eleventh Amendment of the U.S. Constitution provides that federal "judicial power" does not extend to suits against the states. The Eleventh Amendment has long been

8

interpreted as barring lawsuits brought in federal court by private parties against a state, and the agencies and departments of the state, unless it consents. *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984); and *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) (observing that "[t]he ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by private individuals in federal court."). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court.Also barred by the Eleventh Amendment are claims brought against state employees in their official capacities because a suit against a state officer in his official capacity is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).  "And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst,* 465 U.S. 101-02 (internal citation omitted).

Plaintiff does not indicate whether the Defendants are being named in their official capacities, their individual capacities, or both. *See generally*, ECF No. 6. When a *pro se* complaint does not specifically allege the capacity in which a state official is being sued, the proper approach is to review the allegations, the relief sought and the course of proceedings to determine the intent of the complaint. *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). Plaintiff's Amended Complaint purportedly takes issue with the

9

Defendants' actions in performance of their official duties prior to the incident, to include an alleged failure to place his assailant on his enemies list and allegedly exacerbating his injuries during the incident by deploying OC spray. *See* ECF No. 6.

Therefore, under the Eleventh Amendment, Defendants CO II Momoh Turay, Sgt. Michael Adelowo, CO II Abdulsalam Bayero, CO II Olusegun Akinwekomi, and Lt. Fred Hinneh are entitled to dismissal of Plaintiff's Amended Complaint to the extent that it is brought against them in their official capacities, with prejudice.

### B. Defendants are entitled to dismissal because Plaintiff has failed to exhaust all available administrative remedies barring him from bringing federal suit pursuant to the Prison Litigation Reform Act.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) (2018), states that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion under § 1997e(a) is mandatory; therefore, a plaintiff must exhaust his available administrative remedies before a court can hear his claim. *Ross v. Blake*, 578 U.S. 632, 638 (2016) (finding that "a court may not excuse a failure to exhaust"). Consequently, if a plaintiff has not properly presented his claim through an available administrative remedy procedure, the claim must be dismissed pursuant to the PLRA. *Id.*

The Supreme Court has emphasized that proper exhaustion of administrative remedies is required by the PLRA. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Proper" exhaustion means "using all steps that the agency holds out and doing so properly (so that

the agency addresses the issues on the merits)." *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). To properly exhaust his administrative remedies, an inmate must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Id.* at 93. Further, the incarcerated individual must pursue his administrative remedies to the highest available level. *Id.* at 81. The Court in *Woodford* makes it clear that the PLRA makes no exception for incarcerated individuals who merely attempt to exhaust administrative remedies. Actual, proper exhaustion of administrative remedies is an absolute prerequisite for a prisoner, subject to the PLRA, to bring a lawsuit in federal court. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under the PLRA for failure to exhaust his administrative remedies." *Wright v. Hollingsworth*, 260 F. 3d 357, 358 (5th Cir. 2001).

The requirements for exhaustion are defined by "the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 219-220 (2007). Maryland prisons have an Administrative Remedy Procedure available to its incarcerated persons. Filing an ARP with the warden is the first of three steps in the ARP process. *See* Md. Code Regs. ("COMAR") 12.02.28.01–12.02.28.20 (setting forth the rules for exhaustion of administrative remedies for prisoners). The ARP must be filed within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. *See* COMAR 12.02.28.09(B). If the request is denied, or if the warden does not timely respond, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction ("Commissioner"). *See* COMAR 12.02.28.14(B)(5). If the appeal is denied, the prisoner

11

has 30 days to file a grievance with the Executive Director of the IIGO. *See* Md. Code Ann., Corr. Serv. §§ 10-206, 10-210; COMAR 12.02.28.18. Incarcerated individuals, such as Plaintiff, are entitled to a judicial review of the decision by the IIGO by the "circuit court of the county in which the complainant is confined." *See* Md. Code Ann., Corr. Servs. § 10-210 and COMAR 12.07.01.11.

Here, Plaintiff has not properly pursued his administrative remedies and thus, is precluded from maintaining this suit under the PLRA. Specifically, Plaintiff did not complete the administrative process because his ARP was dismissed on the grounds that his claims were under investigation by IID. Exhibit 6 at 4. And although he appealed his ARP to the IIGO, it was dismissed on the grounds that he failed to substantiate his claim that CO II Akinwekomi and CO II Turay for their failed to add his I.I. Yeldell to his enemies list prior to the incident. *Id.* The IIGO also found that Plaintiff failed to cooperate with investigators during the IID investigation. *See id.* Plaintiff was advised that he can seek judicial review of the IIGO's decision with the State circuit court, but he failed to do so. *Id.*

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *Ross*, 578 U.S. at 642. Administrative remedies are deemed unavailable to an inmate only if the inmate is actually prevented from utilizing the grievance process. *Moss v. Harwood*, 19 F.4th 614, 623 (4th Cir. 2021). "Even where officials make threats or misleading statements that would deter a reasonable inmate from pursuing a grievance process, the process remains 'available' if the plaintiff himself was

not deterred." *Id.* Here, Plaintiff has not alleged any facts demonstrating that administrative remedies were unavailable to him, nor does he make any allegations that he was deterred from filing a grievance related to the incidents referred to in his Amended Complaint. Rather, he filed an ARP, but he failed to see it through all of the requisite review channels.

Therefore, the Amended Complaint should be dismissed with prejudice as Plaintiff has failed to exhaust all available administrative remedies, and as a result, his claims are barred by the PLRA.

**C. Plaintiff failed to state a viable claim under the Eighth Amendment.**

A prisoners' Eighth Amendment right to be free from cruel and unusual punishment includes the right to be protected from a substantial risk of serious harm at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825 (1994). A failure to protect claim involves both an objective and a subjective component. To satisfy the objective component, a plaintiff must show that the harm the plaintiff suffered was serious. *Farmer*, 511 U.S. at 834. The second element requires that a plaintiff show that the prison official allegedly violating the plaintiff's constitutional rights had a "sufficiently culpable state of mind." *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014) (citing *Farmer*, 511 U.S. at 834). In this context, the required state of mind that must be established is a "deliberate indifference to inmate health or safety." *Id.* at 347.

A "plaintiff establishes 'deliberate indifference' by showing that the prison official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Id.* (internal citation omitted). "[D]eliberate indifference is 'a very high standard,' which requires that a

plaintiff introduce evidence suggesting that the prison official had actual knowledge of an excessive risk to the plaintiff's safety." *Id.* (citations omitted). Thus, to have the requisite culpable state of mind, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Rich v. Bruce*, 129 F.3d 336, 338-340 (4th Cir.1997) (evidence concerning "constructive notice" of a substantial risk is generally not sufficient proof to establish a deliberate indifference claim). "Prison officials are, therefore, obligated to take reasonable measures to guarantee inmate safety." *Makdessi v. Fields*, 789 F. 3d. 126, 132 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 833). However, an "official's failure to alleviate a significant risk that he should have perceived but did not," does not constitute deliberate indifference. *Farmer*, 511 U.S. at 838.

Although prisoners have the right to be protected from a substantial risk of serious harm at the hands of other inmates, not "every injury suffered by one prisoner at the hands of another […] translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 833-834. In *Rich*, the Fourth Circuit rejected the notion that a deliberate indifference claim may be stated through allegations that an inmate-assailant posed a general risk of danger. 129 F.3d at 339. The court reasoned that even if a prison official knew, "as a general matter, that [an inmate] was at risk from other inmates, and from [an attacker] in particular. . .[such facts] do not establish. . . .that [the prison official] had actual knowledge that his actions uniquely increased these general risks of violence." *Id.* In the case, none of the Defendants had actual knowledge that increases the

14

general risks of violence against Plaintiff since there was no event prior to the December 20, 2023 incident that instigate any of the Defendants to place Plaintiff's fellow incarcerated individual, Yeldell, in Plaintiff's enemies list nor Plaintiff directly asked any of Defendants that Yeldell should be part of his enemies list.

What can be expected is that prison officials act responsibly under the circumstances that confront them. *Farmer*, 511 U.S. 845. Even where a defendant was "aware of facts from which an inference *could be* drawn" that Plaintiff might be in danger, liability will not attach unless the Defendant "actually drew the inference" that the actions taken would expose the Plaintiff "to a substantial risk of serious harm." *Rich*, 129 F.3d at 338.

Here, Plaintiff claims that I.I. Yeldell was his cellmate and that he requested to be included in Plaintiff's enemies list prior to the incident because of a threat. ECF No. 6 at 4. However, Plaintiff was never housed with I.I. Yeldell at JCI prior to the incident. *See* Exhibit 1 at 4, 6-7. Additionally, Plaintiff fails to allege that Defendants CO II Olusegun Akinwekomi, CO II Momoh Turay, and Lt. Fred Hinneh knew or should have known that I.I. Yeldell threatened his safety prior to the incident, which would have triggered policies and procedures regarding the placement of I.I. Yeldell on Plaintiff's enemies list as there was no record of any issues between the Plaintiff and I.I. Yeldell before the incident on December 20, 2023. Exhibit 1 at 3, 5. Nor is there a record of Plaintiff formally declaring I.I. Yeldell as his enemy before the incident occurred. *See id.* It was only after the incident occurred that Plaintiff declared I.I. Yeldell as his enemy, which resulted in I.I Yeldell's placement on Plaintiff's enemy list. *See* Exhibit 2 at 5.

15

Accordingly, Plaintiff's claim for failure to protect under Eighth Amendment Rights should be dismissed with prejudice given that Defendants were not made aware of any risk of harm to the Plaintiff by I.I Yeldell prior to the alleged incident.

### D. Plaintiff fails to state a claim against Defendants Sgt. Adelowo and CO II Bayero for excessive force under the Eighth Amendment.

To the extent that Plaintiff maintains a claim against Defendants Sgt. Adelowo and CO II Bayero under the Eighth Amendment for excessive force, it fails as a matter of law and should be dismissed. A claim that a prison official used excessive force on an inmate and thereby inflicted cruel and unusual punishment in violation of the Eighth Amendment involves both objective and subjective elements. *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998). The objective element of the analysis requires determining whether the defendant's actions offend contemporary standards of decency. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). To answer this question, the Court weighs five factors: (1) the need for the application of the force, (2) the relationship between the need for the use of force and the amount of force used, (3) the extent of the injury inflicted, (4) the extent of the threat to the safety of staff and inmates as reasonably perceived by the defendant, and (5) any efforts made to temper the severity of the use of force. *Whitley v. Albers*, 475 U.S. 312, 321 (1986); and *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008). The subjective element of the analysis requires a determination of "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7.

16

In *Wilkins v. Gaddy*, 559 U.S. 34 (2010) the Supreme Court explained that its holding in *Hudson v. McMillian*, *supra*, did not stand for the proposition that "a certain quantum of injury [needed to be] sustained to make out an excessive force claim, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. 34. The Court did not want an inmate who was the victim of excessive force to lose the ability to pursue an excessive force claim because he had "the good fortune to escape without serious injury." *Id.* at 38. Absence of serious injury, however, is not irrelevant. Absence of injury indicates that the amount of force, *if any*, was minuscule. A "push or shove" without any resulting discernible injury almost always fails to state a claim for excessive force because the Eighth Amendment's prohibition of cruel and unusual punishment "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* (quoting *Hudson,* 503 U.S. at 9). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *Graham v. Connor*, 490 U.S. 386, 396 (1989); and *Beckwith v. Hart*, 263 F. Supp. 2d 1018, 1024 (D. Md. 2003). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Here, the single burst of OC spray into Plaintiff's face by Sgt. Adelowo was utilized in a good-faith effort to stop Plaintiff and I.I. Yeldell to stop fighting after they refused to

17

when Sgt. Adelowo ordered them to stop. Exhibit 3 at 6-8. Accordingly, it was necessary for Sgt. Adelowo to take measures to cease the fighting, especially given that a weapon was involved. For these reasons, Plaintiff fails to state a claim for excessive force under the Eighth Amendment against Defendants Sgt. Adelowo and CO II Bayero, and therefore, the claim should be dismissed with prejudice.

**E. Defendants are entitled to qualified immunity.**

Defendants COII Momoh Turay, Sergeant Michael Adelowo, CO II Abdulsalam Bayero, CO II Olusegun Akinwekomi, and Lieutenant Fred Hinneh are entitled to summary judgment on the basis of qualified immunity in their personal capacities as to all claims brought by Plaintiff in this action. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Turner v. Dammon*, 848 F.2d 440, 443 (4th Cir. 1988); and *Young v. Lynch*, 846 F.2d 960, 963 (4th Cir. 1988).

Here, and as previously stated above, Defendants have not violated any clearly established constitutional right of which a reasonable public official should have known with respect to Plaintiff. Qualified immunity "is intended to allow public officials to act, with independence and without fear of consequences, where their actions do not implicate clearly established rights." *Turner v. Dammon*, 848 F.2d at 443 (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Whether an official is entitled to qualified immunity must be determined "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Such entitlement is

18

an *immunity from suit* rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

Under the standard articulated in *Harlow v. Fitzgerald* (457 U.S. 800), and *Mitchell v. Forsyth* (472 U.S. 511 (1985)), the question of whether a government or public official is entitled to summary judgment based on qualified immunity generally turns on the "objective reasonableness of the action, assessed in light of the legal rules that were 'clearly established at the time the action was taken.'" *Harlow*, 457 U.S. at 818. The clearly established law must not be defined at a "high level of generality," to be clearly established, precedent must establish the constitutional issue "beyond debate." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). Qualified immunity thus protects public officials not only from liability, but from the vexations of trial. *See Mitchell*, 472 U.S. at 526. In the case, Defendants who were present at the incident of December 20, 2023 responded with reasonable actions in light of the exigencies of the circumstances.

'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S. Ct. 577, 589, 199 L. Ed. 2d 453 (2018) (citations omitted). In *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), "the "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that

19

his conduct was unlawful in the situation he confronted." This requires a high "high degree of specificity." *Mullenix v. Luna,* 136 S.Ct. 305, 309 (2015) (*per curiam*).

Further, it has been stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff, supra,* at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra,* at 641, 107 S.Ct. 3034.

The doctrine of qualified immunity shields officers from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

Here, Plaintiff offers no facts or law to support a claim that Defendants violated a "clearly established" law under the circumstances of Plaintiff's claims. Rather, the record shows that Defendants were acting within the scope of their duties as correctional officers. Sgt. Adelowo's act of dispersing a single burst OC spray onto Plaintiff and his assailant's faces during the December 20, 2023 incident when a weapon was involved, and they were refusing orders to cease fighting was well within the scope of his duties to restore and maintain institutional order. Likewise, Plaintiff fails to support his claim that prior to the December 20, 2023 incident, he requested the Defendants to place I.I. Yeldell on Plaintiff's enemies list. *See* Exhibit 2 at 5. In fact, Plaintiff was never housed with I.I. Yeldell, which

contradicts all of his claims regarding his purported pre-incident encounters with I.I. Yeldell. *See* Exhibit 1 at 4, 6-7. Rather, I.I. Yeldell was placed on January 8, 2024, on Plaintiff's enemies list after the December 20, 2023 incident at Plaintiff's direction. Exhibit 2 at 5. For these reasons, Defendants are entitled to qualified immunity and Plaintiff's Amended Complaint should be dismissed with prejudice, or in the alternative, summary judgment should be entered in their favor.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint with prejudice, or that summary judgment be entered in their favor.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ *Ruzzel E. Castañeda*
RUZZEL E. CASTAÑEDA
Assistant Attorney General
Federal Bar No. 31412
Saint Paul Plaza - 19th Floor
200 St. Paul Place
Baltimore, Maryland 21202
Phone: (410) 576-7299
E-mail:
rcastaneda@oag.state.md.us

*Attorneys for Defendants CO II Momoh Turay, Sgt. Michael Adelowo, CO II Abdulsalam Bayero, CO II Olusegun Akinwekomi, and Lt. Fred Hinneh*

21