IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTONIO L. THOMAS,

   Plaintiff,

v.

CO II MOMOH TURAY,
SGT. MICHAEL ADELOWO
CO II ABDULSALAM BAYERO,
SGT. FRED HINNEH, and
CO II OLUSEGUN AKINWEKOMI,[1]

   Defendants.

Civil Action No.: PX-24-1307

**MEMORANDUM OPINION**

Plaintiff Antonio L. Thomas, a Maryland inmate, filed suit under 42 U.S.C. § 1983 against Officers Olusegun Akinwekomi, Momoh Turay, and Abdulsalam Bayero, as well as Sergeants Fred Hinneh and Michael Adelowo, for their alleged failure to protect Thomas from an inmate assault and for using excessive force, all in violation of his Eighth Amendment right to be free from cruel and unusual punishment. ECF No. 6. Defendants move to dismiss the Amended Complaint or, alternatively, for summary judgment to be granted in their favor.[2] ECF No. 23. The Court previously advised Thomas of his right to oppose the motion, but he filed no substantive response. Instead, Thomas asked for court appointed counsel. ECF No. 29. That motion will be granted. The Court also has reviewed the filings and does not need a hearing. *See* Loc. R. 105.6 (D. Md.

---

[1] The Clerk is directed to amend the docket to reflect the full and correct spelling for the name of each Defendant.

[2] Defendants also move to seal Thomas's medical records filed as Exhibit 4. ECF No. 25. The unopposed motion is granted.

2025). For the reasons stated below, Defendants' motion, construed as one for summary judgment, is granted as to Adelowo and Bayero and denied as to Turay, Hinneh, and Akinwekomi.

**I.     Background**

On December 20, 2023, Thomas's former cellmate at Jessup Correctional Institution, Trevon Yeldell, attacked Thomas with a homemade knife. ECF No. 23-5 at 7. Officers Adelowo and Bayero responded to the cell and ordered the men to stop fighting. When they did not, Adelowo deployed a one-second burst of pepper spray. ECF No. 23-3 at 5, 7. Thomas was treated in for stab wounds and exposure to the pepper spray and returned to the housing unit the same day. ECF No. 23-5 at 6; ECF No. 24.

The Department of Public Safety and Correctional Services ("DPSCS") Intelligence & Investigative Division ("IID") opened an immediate investigation. ECF No. 23-5. An IID investigator interviewed the responding officers (ECF No. 23-5 at 7) but Yeldell and Thomas refused to talk to the investigator. ECF No. 23-4 at 3, 4; ECF No. 23-5 at 6-8. Ultimately, Yeldell faced administrative and criminal charges for the stabbing. ECF No. 23-5 at 8, 19, 50. Yeldell admitted to several prison rule violations and as a sanction, lost 90 days good conduct credit and was placed in segregation for 60 days. ECF 23-5 at 20-27. The record does not reflect the outcome of the criminal charges.

Thomas also pursued administrative remedies concerning the attack. ECF No. 23-7 at 4. As part of the administrative claim, Thomas recounted that in late October of 2023, while he and Yeldell were cellmates, Yeldell threatened to attack Thomas. Officers recovered a knife in the cell during a related search. *Id.* at 4-5. Thereafter, Thomas asked Officer Akinwekomi to add Yeldell to his "enemies list," so that the men would remain separated, but this was never done. *Id.* Instead Thomas was told that because Yeldell would be transferred once released from segregation, the

2

separation order was unnecessary.  *Id*. at 5.  As a result, when Yeldell did return to the facility, no separation order was in place, leaving Yeldell free to attack Thomas.  *Id*.

The ARP was dismissed because of the IID investigation.  *Id*. at 3.  Thomas appealed the decision to the Incarcerated Individual Grievance Office ("IIGO"), which, too, dismissed the grievance.  ECF No. 23-8 at 3.  But on January 8, 2024, Yeldell was added to Thomas's enemy alert list.  ECF No. 23-4 at 5.

## II.   Standard of Review

Defendants move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor under Rule 56.  Such motions implicate the Court's discretion under Rule 12(d).  *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012).  Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'"  *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Defendants' motion put Thomas on notice that they sought summary judgment in their favor.  ECF No. 26.  The Court also notified Thomas of his right to respond (ECF No. 25), which he declined to do.  Thomas, thus, received ample notice under Rule 12(d).  The Court will construe

the motion as one for summary judgment. *See, e.g.*, *Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005).

Rule 56(a) requires the Court to grant summary judgment if the movant shows that no genuine dispute of material fact exists, thus entitling the movant to judgment as a matter of law. The Court views the evidence most favorably to the nonmovant without making credibility assessments. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

### III. Analysis

#### A. Failure to Exhaust Administrative Remedies

As a threshold matter, Defendants argue that the Amended Complaint should be dismissed because Thomas failed to exhaust administrative remedies prior to filing suit. The Prison Litigation Reform Act mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. Although exhaustion under § 1997e is not a jurisdictional prerequisite, a plaintiff must nonetheless exhaust before the court will hear the claim. *See Jones v. Bock*, 549

U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). *See also Ross v. Blake*, 578 U.S. 632, 639 (2016).

Exhaustion requires an inmate to complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 933 (2006). Importantly, however, the Court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross v.* 578 U.S. at 636. An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda*, 478 F.3d at 1225); *see also Kaba*, 458 F.3d at 684.

DPSCS implements a well-defined administrative grievance process for inmates. *See generally* Md. Code Ann. (2023 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201, *et seq.*; Md. Code Regs. ("COMAR") 12.07.01.01B(1) (defining ARP). An inmate first must file an ARP with the Warden where he is confined, and if the ARP is denied, the inmate must next appeal the denial to the Commissioner of Correction. If the Commissioner of Correction finds against the inmate, the inmate next must file a grievance with the IIGO. C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B. If the grievance is determined to be "wholly lacking in merit on its face," the IIGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B. An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii).

Defendants maintain that the Amended Complaint must be dismissed for lack of exhaustion because Thomas failed to appeal the IIGO's dismissal to the Circuit Court. ECF No. 23-1 at 13.

But it is well established that where an ARP is dismissed pending an open IID investigation, administrative remedies are simply unavailable. *Younger v. Crowder*, 79 F.4th 373, 381 (4th Cir. 2023). *See also* COMAR 12.02.28.11(B)(h) (automatically dismissing ARP while IID investigation pending). *Id.* Administrative exhaustion requirements in this circumstance amount to "nothing but 'dead end[s]' that are 'practically speaking, incapable of use.'" *Younger*, 79 F.4th at 380 (quoting *Ross*, 578 U.S. at 643-44). Accordingly, the Court will not dismiss for failure to exhaust administrative remedies.[3]

The Court turns next to whether Thomas' constitutional claims survive summary judgment.

### B. Eighth Amendment Failure-to-Protect Claim

The Amended Complaint accuses Defendants Turay, Hinneh, and Akinwekomi of failing to protect Thomas from Yeldell's attack, in contravention of Thomas' right to be free from cruel and unusual punishment. ECF No. 6. The Eighth Amendment to the United States Constitution "imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer*, 511 U.S. at 832), to include implementing "reasonable measures" designed to "guarantee the safety of the inmates." *Id*. (internal quotation marks omitted). But "not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). To sustain such a claim, the plaintiff must adduce some evidence that objectively, defendants had deprived him of his rights and that subjectively, the individual officer engaged in those acts with deliberate indifference to the inmate's needs. *See Raynor*, 817 F.3d at 127.

---

[3] Even if exhaustion applied, Defendants incorrectly argue that Thomas was required to appeal the IIGO dismissal to the Circuit Court. *See, e.g., Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

As to the objective component, some evidence must "establish a serious deprivation of [the inmate's] rights in the form of a serious or significant physical or emotional injury" or substantial risk of injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

For the subjective component, some evidence must show that the officers acted with "a sufficiently culpable state of mind" which includes "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, (1994). A plaintiff may "prove an official's actual knowledge of a substantial risk in the usual ways including inference from circumstantial evidence" so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Raynor*, 817 F.3d at 128 (internal quotation marks and citation omitted); *see also Ford v. Hooks*, 108 F.4th 224, 231 (4th Cir. 2024).

When viewing the evidence most favorably to Thomas, he and Yeldell were cellmates in late October and early November 2023, contrary to Defendants' contention. *Compare* ECF No. 23-3 at 5-7; *with* 23-1 at 16 ("…Plaintiff was never housed with I.I. Yeldell at JCI prior to the incident. *See* Exhibit 1 at 4, 6-7). These dates correspond with when Yeldell had threatened Thomas, leading to the recovery of a knife in their cell, and when Yeldell had been transferred to administrative segregation. ECF No. 23-3 at 4, 6-7. Thus, this evidence is consistent with Thomas' allegation that Yeldell had presented an actual, serious threat to his safety.

Defendants next contend that the claim fails because Thomas did not allege that Turay, Hinneh, or Akinwekomi knew of Yeldell's prior threats, which notice would have required Yeldell to be placed on Thomas' enemy alert list. *See* ECF No. 23-1 at 16. This argument squarely

7

contemplates that the Court would confine its analysis to the Complaint allegations on a motion to dismiss. But more to the point, Defendants are wrong. The Complaint plainly states that Thomas had notified Turay, Hinneh, and Akinwekomi of Yeldell's threats with a homemade knife, prompting a cell search, recovery of the knife, and placement of Yeldell in segregation. ECF Nos. 1 & 6; ECF No. 23-7 at 45. Thomas next advised Akinwekomi that in light of the threat, Thomas feared for his safety if both he and Yeldell were housed in general population. Akinwekomi, in response, assured him that Yeldell would not be returning to general population so no "enemies" alert was necessary. ECF No. 23-7 at 5. But Yeldell evidently did return and ultimately stabbed Thomas. Given Thomas' particularized allegations, supported by a contemporaneous administrative complaint of the same, the Court cannot say that there are no disputes of material fact on the Eighth Amendment failure to protect claim as to Turay, Hinneh, and Akinwekomi. The motion as to them is thus denied.

### C.  Excessive Force Claim

Thomas separately alleges that Adelowo and Bayero's use of pepper spray during the December 20 stabbing amounts to unconstitutionally excessive force. ECF No. 23-7 at 5 ("Sgt. Michael Adelowo and Officer Bayero deployed OC spray into my face, causing me to have a [sic] asthma attack"). *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). *See also Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (citation omitted). An Eighth Amendment excessive force claim will proceed if the officer uses force on an inmate "maliciously and sadistically to cause harm," rather than as a "good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Accordingly, to survive summary judgment, some evidence must demonstrate that the prison official acted with a sufficiently culpable state of mind," and that

the "deprivation suffered [by], or injury inflicted on, the inmate was sufficiently serious." *Iko v. Shreve*, 535 F. 3d 225, 238 (4th Cir. 2008) (quoting *Williams*, 77 F.3d at 761).

When viewing the record most favorably to Thomas, nothing suggests that any of the officers acted with the requisite culpability. The record indisputably shows that Adelowo and Bayero responded promptly to the attack on Thomas, directed the inmates to stop fighting, and deployed a short burst of pepper spray to end the fight. ECF No. 23-5 at 6-8. Thomas also received immediate treatment at the infirmary for the OC exposure. ECF No. 24 at 6. In short, nothing supports that the officers acted sadistically or maliciously with an intent to harm Thomas. *Id.* Summary judgment, therefore, is granted in favor of Adelowo and Bayero.

### IV.    Conclusion

For the foregoing reasons, Defendants' motion is granted in part and denied in part. Because the case will proceed and discovery will be necessary, Thomas' Motion to Appoint Counsel (ECF No. 29) is granted. A separate Order follows.

|  |  |
|---|---|
| 1/9/25 | /S/ |
| Date | Paula Xinis |
|  | United States District Judge |